UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DANNY ANDREW YOUNG,

    *Petitioner*,

    v.

WILLIAM HUTCHINGS, *et al.*,

    *Respondents*.

Case No. 2:12-cv-00524-RFB-NJK

**ORDER**

**A. Introduction**

    This habeas matter is under 28 U.S.C. § 2254. The Court held an evidentiary hearing on September 15, 2020, on (a) the merits of Ground 4(c), (b) the potential relief to be ordered herein if Petitioner prevails on that claim as well as Ground 3, and (c) Petitioner's motion for release (ECF No. 78). This order supplements the Court's prior merits order on July 17, 2020 ("July Order"). (ECF No. 74).

**B. Findings of Fact**

    The Court having held an evidentiary hearing and reviewed the record, makes the following findings of fact. The Court also incorporates by reference its prior findings in its July Order and construes them to be consistent with the findings in the instant order.

    Petitioner Danny Young challenges his Nevada state conviction, pursuant to a jury verdict, of two counts of sexual assault, one count of attempted sexual assault, and one count of incest.  As further background, the Court incorporates its summary in its prior order of the trial evidence that it made in relation to Young's challenges to the sufficiency

1

of the evidence subject to the qualifications stated in note 1 therein. (<u>See</u> ECF No. 74, at 2-10.) The Court reiterates that in summarizing the trial evidence it makes no credibility determinations or factual findings regarding the truth or falsity of evidence presented at trial.

In Ground 4(c), Young alleges that he was denied effective assistance of trial counsel when counsel failed to discuss an advantageous plea offer with him. The Court incorporates by reference its discussion in its prior order regarding the factual background to Ground 4(c) that is reflected in the state court record, with relevant record citations. (<u>See</u> ECF No. 74, at 32-34 & 37-42.) Some salient factual points from that discussion are reiterated in this order.

Heading into trial, if Young were convicted and sentenced consecutively to the maximum sentence on each count, he would face a minimum of 32 years of physical custody prior to any possible parole outside of prison walls. Moreover, in the likely event that Young's parole on a prior conviction were revoked as a result of a conviction, Young potentially would start serving such a 32-year minimum period of incarceration only if and after he first was paroled again on that offense, if the sentences in the present case were imposed consecutively to the sentence in that prior case. (<u>See</u> <u>id.</u>, at 32-33.)

Young was approximately 50 years old when the trial started. (<u>See</u> <u>id.</u>, at 33.) Going to trial thus risked essentially incarceration for life without a practical possibility of parole. With maximum sentencing, Young would not be eligible for a parole outside of prison walls before he was 82 years old, and likely well past that age with a parole revocation on the prior conviction. (<u>See</u> <u>id.</u>, at 37-38.)

Near the end of an April 2, 2009 calendar call, on the Thursday before the Monday trial, the trial judge asked the parties whether there was a pending offer and whether it was subject to being revoked. The State responded that "by the end of today the offer was two counts of incest and we would agree to eight to 20," elaborating further that "that's the outstanding offer, and by the end of today we won't offer that anymore." (<u>See</u> <u>id.</u>, at 33.)

The offer lapsed that day.  Five days later during the trial, the defense, against the backdrop of the pretrial rulings in place, conceded Young's guilt on the incest charge. That concession exposed Young to a potential maximum sentence of 4 to 10 years on that count.  (Id., at 37.)

On the prior Thursday, the then 50-year-old Young would have been able to avoid potential exposure—based on maximum sentences imposed consecutively—to a minimum of 28 more years of incarceration by instead agreeing to the State's plea deal, which involved a maximum of only 4 more years of minimum incarceration than on the count conceded at trial.  That is, a plea deal with only 4 more years of minimum incarceration (in the event of consecutive sentencing) than on the conceded count would have avoided instead possible incarceration for a minimum of 28 more years before the possibility of a noninstitutional parole.  Defense acceptance of the plea offer thus would have replaced a potential additional 28-year minimum aggregate sentence with the possibility of only an additional 4-year minimum sentence, a sevenfold difference.  (See id., at 37-38.)

Young ultimately was convicted on all charges at trial, and the trial judge sentenced him to the maximum possible sentencing, with the sentences imposed consecutively to one another and further consecutively to the sentence on the prior conviction.  (Id., at 42.)

After considering the evidence presented at the federal evidentiary hearing and the record in this case, the Court further finds as follows, on a *de novo* review, that defense counsel clearly did not confer with Young—on any topic—for months prior to the Thursday calendar call.

The state district court minutes reflect that the case initially was trailed "for [defense counsel] to speak with the defendant."  (ECF No. 24-5, at 35.)  When the case was recalled, lead defense counsel orally moved for a continuance of two to four weeks in part because she had seen Young that day for the first time in several months.  Counsel stated that she had not seen Young over that period because (a) she had been in trial for the past six weeks and (b) correctional officials had failed to transport Young for trial

1    preparation as ordered previously.  (ECF No. 24-36, at 3 & 5-6.  <u>See also</u> ECF No. 104,

2    at 20-22; Joint Exhibit No. 12, at 18-20; Joint Exhibit No. 14, at 33-36.)

3         The Court also finds that defense counsel did not confer with Young—on any topic,

4    including the plea offer stated at the end of the calendar call—after the calendar call and

5    prior to the lapse of the offer.

6         Young testified credibly that he was taken away by officers immediately following

7    the calendar call and had no communication from or with counsel during the rest of the

8    day.    Both defense counsel, many years and many cases after the fact, had no

9    independent recollection of speaking with Young about the offer at any point, including

10   after the calendar call.  The detention center visitation logs confirm that defense counsel

11   did not go to the detention center and speak with Young in custody after the calendar call

12   before the offer lapsed.  The practice of both counsel in this context would have been to

13   speak with a defendant who then was back in custody at the detention center in person

14   via a confidential contact visit rather than by phone or video conference.  (ECF No. 104,

15   at 22-27, 39 & 44-45; Petitioner's Hearing Exhibit 2, at 011; Joint Hearing Exhibit 12, at

16   7-13, 15, 16-18, 20-21, 25-39, & 41-44; Joint Hearing Exhibit 14, at 6-38.)

17        The Court does not find that the hearing evidence or the record establish that the

18   prosecution conveyed the plea offer to defense counsel prior to the calendar call and that

19   defense counsel then conferred with Young about the offer when the matter initially was

20   trailed at the calendar call.

21        The prosecutor on the case, Richard Scow, presented an account of what allegedly

22   transpired at the calendar call that was presented for the first time in the long life of this

23   case at the federal evidentiary hearing.  The Court received Scow's testimony subject to,

24   *inter alia*, a preserved hearsay objection as to testimony as to what he said defense

25   counsel said and as to what he said that she said that Young said.  (<u>See</u> ECF No. 91, at

26   2; ECF No. 96, at 4; ECF No. 104, at 52-56.)  Scow testified that he conveyed the offer

27   to lead defense counsel Stacey Roundtree by telephone "probably within a few days"

28   before the calendar call.  He further testified that the matter was trailed initially at the

1  calendar call for her to discuss the offer with Young and that Roundtree told him that she
2  would be discussing the offer with Young then.  Scow maintained that Roundtree called
3  him later in the day after the calendar call to tell him that Young had rejected the offer.
4  (ECF No. 104, at 58-73.)

5       As an initial matter, the Court sustains, on the showing and argument made, the
6  hearsay objection to Scow's testimony as to what Roundtree allegedly said and as to
7  what she allegedly said Young said.

8       Moreover, even if the entirety of Scow's testimony instead were regarded by the
9  Court as admissible, the Court finds the testimony to be, at best, a reconstructed
10  recollection that is not credible. The Court thus reiterates its finding that defense counsel
11  did not discuss the State's plea offer with Young at any time, whether before, during, or
12  after the Thursday calendar call and prior to the plea offer lapsing.

13       The Court further finds that there is a reasonable possibility that Young would have
14  accepted the plea offer if counsel had conferred with him regarding the offer before it
15  lapsed, that the State would not have withdrawn the offer during the brief interval before
16  the then plea bargain was consummated, and that the state district court thereafter would
17  have accepted the plea bargain.

18       In this regard, nothing in Young's possible consideration of a different offer—if
19  any—made as early as the preliminary hearing stage in or around April 2007 leads to a
20  finding that he would have rejected the later calendar call plea offer two years thereafter
21  in April 2009.  (See Joint Hearing Exhibit No. 12, at 19-21; ECF No. 104, at 43 & 59-61.)[1]
22  There instead is a reasonable probability that Young would have accepted the calendar
23  call plea offer if counsel had consulted with him about the offer and explained the
24  advantageous offer to him before it lapsed.  (See also ECF No. 104, at 30; Joint Hearing
25  Exhibit No. 12, at 20-21, 24-25, 30-31, 34-36 & 42-44; Joint Hearing Exhibit No. 14, at
26  29-30.)

27  _____

28       [1] The evidentiary hearing record does not reflect any specifics of any such prior offer.

Further, there is a reasonable probability that the ensuing Thursday eve-of-trial plea bargain would have been consummated in open court within a matter of only one to two judicial days, given that trial was scheduled to commence on the Monday.  There is no evidence in the record of any intervening circumstances occurring during that time that would have given the State occasion to revoke its offer.  Nor does the record reflect any factual circumstances that would have given the district court occasion to not accept the offer under the court's circumscribed ambit of discretion under Nevada state law.[2]

With respect to the motion for release, the Court takes judicial notice of the inmate locator page for Young on the corrections department's official website, which reflects that he began serving sentences on the judgment of conviction at issue in this matter on or about June 2, 2015, or approximately five-and-one-half years prior to this order.[3]

## C. Discussion

### 1. Legal Standard

#### a. AEDPA Review Standard

When the state courts have adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170 (2011).  In particular, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

[2] See generally Sandy v. Fifth Judicial District Court, 113 Nev. 435, 439-42, 935 P.2d 1148, 1150-52 (1997).

[3] The inmate locator page can be accessed at:  https://ofdsearch.doc.nv.gov/form.php.  Young's offender ID number is 32930.

6

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. Pinholster, 563 U.S. at 202. Rather, a state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (*per curiam*). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. Id. Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. Id. Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." Mitchell, 540 U.S. at 18; Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

### b. **Strickland** and Ineffective Assistance of Counsel

Strickland v. Washington, 466 U.S. 668 (1984), and its progeny constitute the clearly established federal law governing claims of ineffective assistance of counsel. Pinholster, 563 U.S. 170, 189 (2011) (citing Strickland, 466 U.S. at 668). Strickland recognizes that, under the Sixth Amendment, the accused has a constitutional right to the effective assistance of counsel at all critical stages of a criminal proceeding, which

1  includes plea negotiations. See, e.g., Missouri v. Frye, 566 U.S. 134, 140 (2012).  To
2  establish ineffective assistance under Strickland, an individual must demonstrate that: (1)
3  counsel's "performance was deficient"; and (2) counsel's "deficient performance
4  prejudiced the defense." Id. at 687. The "ultimate focus" of the Strickland standard is "the
5  fundamental fairness of the proceeding whose result is being challenged." Id. at 696.

6      To establish deficient performance, a petitioner must show that "counsel's
7  representation fell below an objective standard of reasonableness." Id. at 688. "A court
8  considering a claim of ineffective assistance must apply a 'strong presumption' that
9  counsel's representation was within the 'wide range' of reasonable professional
10 assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S.
11 at 689). With respect to prejudice, a petitioner must demonstrate that, "but for counsel's
12 unprofessional errors," there is a "reasonable probability" that the "result of the
13 proceeding would have been different." Strickland, 466 U.S. at 694. The likelihood of that
14 result must be "substantial, not just conceivable." Richter, 562 U.S. at 112.

15      **2. Analysis**

16      The Court incorporates by reference its discussion of the merits on Grounds 1
17 through 3 in its July Order, subject to the additional discussion herein regarding, *inter alia*,
18 the appropriate relief on the meritorious Ground 3 together with consideration also of
19 Ground 4(c).  (See ECF No. 74, at 12-32.) The Court further incorporates its discussion
20 of the merits of Ground 4, and further particularly Ground 4(c), as if set forth herein and
21 subject to the additional discussion herein.

22      The Court reiterates its prior finding based on the record prior to the evidentiary
23 hearing that the state high court's rejection of Ground 4(c) on the merits on the record
24 and allegations presented in the state courts was an objectively unreasonable application
25 of clearly established federal law on both the performance and prejudice prongs of the
26 Strickland analysis. See 466 U.S. at 35-42 & n.30.); see also Lafler v. Cooper, 566 U.S.
27 156, 173 (2012) (finding state court decision contrary to Strickland).

28

1   This Court's further review of Ground 4(c) is *de novo*. See July Order at 42 & nn.

2   25 & 30.) On *de novo* review, the Court concludes that defense counsel's failure to confer

3   with Young about the State's plea offer fell below an objective standard of reasonableness

4   and constituted deficient performance under <u>Strickland</u> and its progeny. No strategic

5   reason for such a failure is, or conceivably could be, established on this record. As

6   discussed extensively in the Court's prior order, there otherwise can be no reasonable

7   argument under an objective view of defense counsel's conduct that counsel satisfied

8   <u>Strickland</u>'s deferential performance standard upon a record establishing that counsel

9   failed to confer with Young about the offer before it lapsed.  (See <u>id.</u>, at 37-42.)[4]  Counsel's

10  professional obligation clearly extended to explaining the offer and consulting with the lay

11  defendant about the offer before it lapsed.  E.g., <u>Frye</u>, 566 U.S. at 145-47.  Counsel

12  merely being present when a plea offer is stated in open court by the prosecution, and

13  then doing nothing further, clearly does not satisfy defense counsel's professional

14  obligations under the Sixth Amendment.  See <u>id.</u>

15  The Court further concludes that Young was prejudiced by defense counsel's

16  deficient performance. To establish prejudice, the petitioner must show that but for

17  counsel's deficient performance "there is a reasonable probability that the plea offer would

18  have been presented to the court (*i.e.*, that the defendant would have accepted the plea

19  and the prosecution would have accepted the plea and the prosecution would not have

20  withdrawn it in light of intervening circumstances), that the court would have accepted its

21  terms, and that the conviction or sentence, or both, under the offer's terms would have

22  been less severe than under the judgment and sentence that in fact were imposed."

23  <u>Lafler</u>, 566 U.S. at 164.

24  The Court's prior findings, *supra*, establish and the Court reiterates that Young has

25  satisfied all of the criteria for prejudice except for the last criterion.

28  [4] The statement in the prior order regarding there being no question that the sexual activity occurred was directed to the context of how the case was defended at the prior trial.  (See <u>id.</u>, at 39-40.)

Turning to the final criterion, the Court finds that Young has satisfied it as well. Young was convicted on all counts and received the maximum sentence possible, as to both the individual sentences and as to consecutive sentencing, with the sentences running consecutively to each other as well as to a sentence under a prior judgment of conviction. Even without taking into account that the defense conceded to a single incest count with a potential 4 to 10 year sentence only days after the plea offer lapsed, the prejudice to Young is evident. Young received an overall sentence that was _four times_ as severe as the aggregate minimum sentence under the plea offer if he were sentenced consecutively—32 years rather than 8 years.  Cf. Lafler, 566 U.S. at 166 (the defendant was prejudiced where, _inter alia_, he received a sentence that was 3-1/2 times more severe than he likely would have received by accepting the plea offer).

The prejudice is even more manifest when the Court takes into account the defense concession only days later to the single incest count with the potential 4 to 10 year sentence.  As previously noted, defense acceptance of the plea offer would have replaced a potential additional 28-year minimum aggregate sentence with the possibility of only an additional 4-year minimum sentence, a _sevenfold difference_. As previously discussed, the then 50-year-old Young would have been able to avoid the prospect of a sentence that was the practical equivalent of a life sentence without the possibility of parole sentence by instead agreeing to a plea deal with, at most, only 4 more years of minimum incarceration than the defense potentially conceded to at trial.

The prejudice from defense counsel's failure to confer with Young about the plea offer is therefore unequivocal on this record.

The Court accordingly concludes that Young was denied effective assistance of counsel when trial counsel failed to confer with him about the State's plea offer.

Respondents' argument to the contrary is unpersuasive. Respondents urge that: (1) Young has no claim under Frye—which concerned a failure by defense counsel to convey a plea offer—because the plea offer was "conveyed" to Young when he was present in court when the prosecutor briefly described the offer on the record at the

10

calendar call, such that defense counsel thus were not deficient for failing to convey the offer; (2) Young further has no claim under Lafler—which concerned defense counsel providing bad advice regarding a plea offer—because, under his testimony, defense counsel provided no advice at all regarding the plea, such that defense counsel thus were not deficient for providing bad advice; and (3) Young further cannot show that ineffective assistance caused him to reject the plea agreement (which he never affirmatively did) because he "was free to accept the plea agreement" at any time and "[i]ndeed, he could have expressed right there in court that he wanted to accept it."

First, the suggestion that Young has no Sixth Amendment claim because he could have just jumped up and blurted out "I'll take it!" immediately after the State described the offer in open court is nonsensical as it runs contrary to the very existence of a Sixth Amendment right. To accept such a suggestion would be to negate the right itself and prevent any defendant from asserting it. Young clearly had a right under the Constitution to the *assistance of counsel*, to, *inter alia*, consult with him in confidence and explain the offer to him.  Respondents' argument simply would read the Sixth Amendment out of the Constitution in the context of open plea offers, and perhaps others.  This is of course not the law; as current law establishes that "[d]uring plea negotiations defendants are entitled to the effective *assistance* of competent counsel," not counsel who is merely present while the lay defendant instead represents himself. Lafler, 566 U.S. at 162 (internal citations omitted) (emphasis added).Under core principles of Sixth Amendment jurisprudence, including as applied to this specific context, "defendants cannot be presumed to make critical decisions without counsel's advice."  Id. at 165.

Whether on *de novo* review—which this now is—or even applying deferential review under AEDPA, this Court has absolutely no difficulty holding that neither Lafler nor Frye remotely support a state or federal court holding that defense counsel can completely abandon a lay defendant—and provide no explanation or advice whatsoever—whenever a prosecutor has described a plea offer on the record with the defendant present.  The obligation of defense counsel, under the Sixth Amendment and

11

Strickland, clearly requires that defense counsel explain the plea offer to the defendant and confer with him about the offer.  See, e.g., Frye, 566 U.S. at 145-47; Lafler, 566 U.S. at 165.  The notion that defense counsel can avoid providing deficient performance in this context simply by avoiding any discussion whatsoever of the plea offer is ludicrous. Respondents' suggestion *defines* the *epitome* of deficient performance in this context, not its absence.  And as discussed previously, the prejudice sustained in this case from that deficient performance is clear in this case.

Moreover, even if the Court were to consider Respondents illogical position, the record from the calendar call clearly reflects that the judge—a different judge than in earlier proceedings in the case—brusquely rejected multiple requests by Young to speak, including very shortly after the State recited the plea offer.  (ECF No. 24-36, at 5 & 12; ECF No. 104, at 41 & 50-51; see also Joint Hearing Exhibit 12, at 24-25.)[5] Respondents' dubious argument thus runs aground both on the most bedrock of fundamental precepts of Sixth Amendment law as well as on the face of the state court record.

Young clearly was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments.

Young thus is entitled to federal habeas relief on Ground 4(c) as well as, pursuant to the Court's holding in the prior order, also on Ground 3.  The Court accordingly turns to the question of the appropriate remedy—for *this* case—in the situation where Young has prevailed on both Ground 3 and Ground 4(c).

### 3.  Available Habeas Relief For Grant of Petition

In considering the appropriate remedy for this case, the Court notes that the writ of habeas corpus is "at its core, an equitable remedy."  Schlup v. Delo, 513 U.S. 298, 319 (1995).  Accordingly, "[t]he very nature of the writ demands that it be administered with

---

[5] Respondents refer to an example of an earlier proceeding where Young spoke on the record, and Respondents posit that Young thus "has demonstrated that he has no issue being outspoken in court." (ECF No. 95, at 5, citing to ECF No. 24-32, at 5.)  Review of the cited transcript shows that Young was before a different district judge and that that judge first expressly granted Young permission to speak on the record.  At the calendar call pertinent instead here, however, Judge Jackie Glass, who recently had taken over the case, clearly and emphatically rejected Young's attempts to speak on the record.

the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." Harris v. Nelson, 394 U.S. 286, 291 (1969).  This flexible and equitable nature of habeas corpus relief is carried forward in 28 U.S.C. § 2243, which authorizes federal courts to resolve habeas matters as law—and justice—require.  See Hilton v. Braunskill, 481 U.S. 770, 775 (1987).  This statutory authority "vests a federal court 'with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus.'" Id. (quoting In re Bonner, 151 U.S. 242, 261 (1894)).  Accord Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994).

Federal courts thus have broad authority in conditioning a judgment granting relief. Braunskill, 481 U.S. at 775; Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003).  A federal district court has broad discretion, within the context of the unique facts and circumstances of the particular case, to fashion a remedy that is tailored to the injury suffered from the constitutional violation—or as here, multiple injuries suffered from multiple constitutional violations. See Nunes, 350 F.3d at 1056-57.  Where a defendant has been denied effective assistance of counsel in particular, the remedy "should put the defendant back in the position he would have been if the Sixth Amendment violation never occurred," but "without unnecessarily infringing on competing interests." Nunes, 350 F.3d at 1057 (internal citations omitted).[6]

In the present case, the appropriate remedy given the interaction between Ground 3 and Ground 4(c) in this particular case is as follows: (a) the conviction as to all charges, including the incest charge, under the present judgment of conviction will be vacated by the Court's current order and judgment; (b) the State will have an opportunity to retender the lapsed plea offer and Young will be afforded an opportunity to consider and accept the retendered offer, both in the manner and within the respective time periods specified in this order; (c) if Young accepts the offer, the state district court then will have an opportunity, within the time period specified herein, to either accept or reject the then plea

---

[6] Competing interests include not granting a windfall to the defendant or needlessly squandering resources that a state properly has invested in a criminal prosecution.  See Lafler, 566 U.S. at 170.

bargain in the proper exercise of its discretion; (d) if the state district court decides to reject the plea bargain, the case then may be retried, within the time period specified herein, on all charges, including the incest charge; and (e) all with the proviso that an unconditional writ of habeas corpus will be granted if the above steps, to the extent required under the terms of the Court's order and judgment, are not taken within the time periods specified therein, subject to timely request for reasonable modification thereof.

The Court's final order and judgment will vacate Young's conviction as to *all* charges, including the incest charge, subject to the remedial steps that can be taken to rectify the multiple constitutional violations.

Importantly, upon further review the Court is persuaded by Young's argument that the incest conviction also should be vacated even looking to Ground 3 in isolation to afford full relief. The concession made at trial was made against the backdrop of the unconstitutional pretrial ruling negating Young's presumption of innocence. Full relief, looking to Ground 3 in particular, requires that the defense be returned to the *status quo ante* the ruling and allowed to consider whether to make such a concession in a retrial free of the unconstitutional pretrial ruling from the prior trial.

With Young being entitled to relief on Ground 3 as well, the slate should be wiped fully clean with respect to the prior judgment of conviction prior to entry of fully effective remediation. If, on the one hand, Young accepts the retendered plea offer and the state district court then accepts the plea bargain, then the prior incest conviction from the trial essentially falls by the wayside in any event and is supplanted by the conviction on the two incest charges contemplated by the plea offer. If, on the other hand, the state district court instead rejects such a plea bargain and orders a retrial, the case should be retried on a fully clean slate including as to any defense concessions made against the backdrop of an unconstitutional pretrial ruling that negated Young's presumption of innocence.

Additionally, if the state district court rejects a plea bargain and orders a retrial, the case must be retried as to all charges free of any concessions made by the defense at the prior trial in the context of the rulings made as to that trial. Moreover, to keep the slate

14

1  clean at any retrial, any references to the defense concession on the incest charge at the

2  first trial must be precluded in a retrial, subject to any concessions made by the defense

3  at the retrial.[7]

4         Moreover, looking at both grounds, it clearly will not be permissible under this

5  Court's order and judgment for the state district court, if it rejects the plea bargain, to

6  reinstate a judgment of conviction, whether in full or in part, that this Court has found and

7  concluded on Ground 3 was obtained in violation of Young's right to a presumption of

8  innocence, with the violation not constituting harmless error.

9         With that exception, the conditional relief outlined in this order otherwise

10 substantially tracks the potential relief outlined in Lafler on a meritorious ineffective-

11 assistance claim in this context, based here upon a failure to confer regarding an

12 advantageous plea offer.  In outlining the appropriate remedy for that case, the Supreme

13 Court stated that if the habeas petitioner accepted the retendered plea offer, "the state

14 trial court can then exercise its discretion in determining whether to vacate the convictions

15 and resentence [him] pursuant to the plea agreement, to vacate only some of the

16 convictions and resentence [him] accordingly, or to leave the convictions and sentence

17 from trial undisturbed."  566 U.S. at 174.

18        Leaving the prior judgment of conviction undisturbed, in full or in part, is not an

19 appropriate option in this case.  In this case, the Court is not fashioning relief solely on

20 the Lafler-related claim in Ground 4(c).  The Court instead also must take into account

21 that the ensuing judgment of conviction following the trial was obtained in violation of

22 Young's right to a presumption of innocence, as the Court has held on Ground 3.  The

23 Court's overall combined relief thus must account for the interaction between both

24

---

25        [7] In its prior interlocutory partial merits order, the Court indicated initially that relief only on Ground
   3 potentially would extend only to the sexual assault and attempted sexual assault charges, expressly
26 subject to the Court's further consideration of the appropriate relief following a ruling on Ground 4(c).  (ECF
   No. 74, at 31-32.)  An interlocutory order is subject to modification at any time prior to entry of final judgment,
27 and this portion of the prior order further was expressly subject to the further proceedings on Ground 4(c).
   E.g., City of Los Angeles, Harbor Division v. Santa Monica Baykeeper, 254 F.3d 882, 885-89 (9th Cir.
28 2001).  Following final review of the appropriate remedy herein, the Court finds and concludes that the
   conviction as to all charges should be vacated.

meritorious claims and must remedy the injury caused by both constitutional violations, not merely one violation in isolation.  Such a situation was not presented in <u>Lafler</u>. Nothing in <u>Lafler</u> contemplates, much less supports, a state district court having the option to reinstate a trial result that was obtained based on a fundamental constitutional violation over and above defense counsel's failure to confer with the defendant about an advantageous plea offer prior to the trial. Federal habeas relief is flexible and case-specific, not rigid and blind as to context.

Accordingly, if the state district court were to reject the plea bargain, then the only appropriate remaining remedial option in the context of this case, following upon the Court's holdings on Ground 3, is retrial within the specified time period.

Nothing in this Court's order or judgment precludes the state district court, if it accepts a possible plea bargain, from imposing sentences concurrently or otherwise limits the sentencing discretion of the state district court, just as the plea offer articulated by the State at the calendar call included no provision restricting the sentencing discretion of the court. <u>See generally</u> <u>Sandy</u>, 113 Nev. at 439-40, 935 P.2d at 1150-51 (regarding the sentencing authority reserved to the district judge in plea cases under Nevada law).

Lastly with respect to merits review, and to the extent required by the posture on appeal with regard to grounds rejected in the prior interlocutory merits order, the Court will grant a Certificate of Appealabilty (COA) as to Grounds 1(a) and 1(b) but deny a COA as to Ground 2.  The Court incorporates its prior statements in relation to the applicable standard in this regard from its prior order.  (<u>See</u> ECF No. 74, at 19, 24 & 27.)  The Court further finds that the most prudent course here is to make a COA ruling on rejected claims regardless, without seeking to predict the ultimate potential posture of the parties on appeal.

Turning specifically to matters pertaining to Young's motion for release, at the time of the charged incident in October 2004, the maximum penalty on a Nevada conviction for a charge of incest was 4 to 10 years, <i>i.e.</i>, a maximum term of 10 years with as much

1    as 4 years of incarceration prior to eligibility for parole consideration.[8]  The sentence

2    further is subject to the accrual of statutory sentence credits.

3          On the motion for release (ECF No. 78), the Court finds and concludes, pursuant

4    to Rule 23(c) of the Federal Rules of Appellate Procedure (FRAP), and after considering

5    the factors discussed below, that enlargement or release of Young pending review,

6    subject to the particular conditions specified in this order, is warranted and in the interests

7    of justice.

8          Rule 23(c) governs a request for release pending review of a decision conditionally

9    granting the writ of habeas corpus.  See, e.g., Braunskill, 481 U.S. at 772 & 774 (treating

10   a conditional writ as falling within Rule 23(c)).[9]

11         Rule 23(c) directs that "[w]hile a decision ordering the release of a prisoner is under

12   review, the prisoner must – unless the court rendering the decision ... orders otherwise –

13

14

15         [8] See N.R.S. 201.180, as amended through 1995 Laws, ch. 443, § 83, p. 1198; N.R.S. 193.130(1),
16   as amended through 1999 Laws, ch. 288, § 1, p. 1186.

17         [9] Respondents have indicated their intent to appeal the Court's grant of relief on Ground 3 following
     entry of a final order, and it would appear likely that they will challenge on appeal also the grant of relief on
18   Ground 4(c).  (See ECF No. 82, at 3-5.)  Cf. Marino v. Vasquez, 812 F.2d 499, 507 n.10 (9th Cir. 1987)
     (issue of release under FRAP 23 was not moot following decision by the court of appeals because "[t]he
19   State may decide to seek a stay of mandate pending further proceedings or to petition for certiorari"); Jeff
     N. Rose v. Renee Baker, No. 17-15009, at 3 (9th Cir. Apr. 9, 2020)(unpublished order)(directing release
20   pending review of the court of appeals decision where the state had reflected its intent to seek certiorari
     review notwithstanding that its certiorari petition had not yet been filed).

21         Respondents urge that the Court does not have jurisdiction to order Young's release pursuant to
     Rule 23 because, inter alia, Young allegedly is not a "successful petitioner."  (See ECF No. 95, at 5-6.)
22
           Respondents contend that Young is not "successful" because his incest conviction allegedly would
23   not be impacted by the Court's grant of relief as per the preliminary discussion in the earlier interlocutory
     merits order.  As noted, however, the Court's discussion in its earlier order of the potential relief to which
24   Young would be entitled on Ground 3 was contingent upon final consideration of the relief appropriate in
     the case after ruling also on Ground 4(c). In this final order and judgment, the Court is holding that the
25   conviction on all charges under the challenged judgment must be vacated.  Respondents' jurisdictional
     argument thus is based upon a premise that has no pertinence to the final relief ordered herein.

26         Moreover, Respondents simply are wrong on the law when they assert, without supporting apposite
27   citation, that "FRAP 23 only applies to successful petitioners."  (ECF No. 95, at 6.)  Ninth Circuit precedent
     instead clearly states that "Rule 23 establishes the authority of federal courts to release both successful
28   and unsuccessful habeas petitioners pending appeal."  Marino, 812 F.2d at 508.

17

be released on personal recognizance, with or without surety." The Rule creates a presumption for release in cases where a district court grants relief to a habeas petitioner, which is subject to rebuttal. See Braunskill, 481 U.S. at 774 & 777.

When determining whether Respondents have overcome the presumption, the Court considers the following factors: (1) whether Respondents have made a strong showing that they are likely to succeed on the merits; (2) whether Respondents will be irreparably injured by enlargement; (3) whether a denial of enlargement will substantially injure Young; and (4) the public interest. Id., at 776. These general standards only "guide courts when they must decide whether to release a habeas petitioner pending the State's appeal." Id. The "factors contemplate individualized judgments in each case, [and] the formula cannot be reduced to a rigid set of rules. Id., at 777. Rule 23(c) instead accords the court making the custody determination considerable latitude. See id.

Regarding the first factor, "[w]here the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors . . . militate against release." Id., at 778. Conversely, "[w]here the State's showing on the merits falls below this level, the preference for release should control." Id.

Respondents have not established a strong likelihood of success on appeal.

On Ground 3, Respondents urge that there was no violation of Young's right to a presumption of innocence and that he failed to raise a sufficient contemporaneous objection in the state district court. (ECF No. 82, at 3-5.) As to those issues, the ship sailed long ago when *the Supreme Court of Nevada* reached the merits of the constitutional claim and held that Young's presumption of innocence "was violated when the district court allowed the unredacted telephone recordings containing the in-custody advisement to be admitted into evidence over Young's objection." (ECF No. 26-27, at 4.) If Respondents are pinning their hopes on a federal appeal on overturning this holding by their own state supreme court, then they are basing their appeal on argument that demonstrably has exceedingly scant prospect of success. The issue on federal habeas

18

review instead concerned whether the fundamental constitutional error recognized by the state supreme court was nonetheless harmless error.  Respondents urge further that this Court uphold the convictions notwithstanding there allegedly being only isolated references to Young being in custody. However, the State highlighted the improper jailhouse references repeatedly and continuously at trial, from the very inception of the trial through its conclusion.  (See ECF No. 74, at 30.)  The State did so against the backdrop of evidence that was exceedingly close on the sexual assault and attempted sexual assault counts, such that the trial court's error in allowing the State to do so most certainly was not harmless.  (See ECF No. 74, at 13, 18 & 31; see also id., at 2-10.)

On Ground 4(c), given the Court's factual findings and credibility determinations made herein on a *de novo* review following an evidentiary hearing, it is clear beyond peradventure that Young was denied effective assistance of counsel with regard to the beneficial plea offer.  Respondents' argument to the contrary is wholly unpersuasive.

The Court thus is not persuaded that Respondents have established a strong likelihood of success on the merits on appeal.

Braunskill states that even if the respondents cannot establish a strong likelihood of success on the merits on appeal continued custody nonetheless is permissible if the respondents can demonstrate a substantial case on the merits and the second and fourth factors militate against release.  The Court is not sanguine that Respondents' showing in this case satisfies even the lower threshold of a substantial case on the merits on appeal.  But, even if the Court assumes *arguendo* that Respondents can satisfy the lower threshold, it does not find that the remaining factors then militate against release.

This is not a case where, even if Respondents are unsuccessful on appeal, it is necessarily probable that Young will be reconvicted and reincarcerated on the same charges and similar extensive sentences following a retrial. Indeed, it is not even necessarily probable that there will even be a retrial.  If the state district court accepts the reoffered plea bargain, then there will be no retrial and Young thereafter will be sentenced on a conviction on two incest charges, with two 4 to 10 year sentences imposed either

consecutively or concurrently.  In that situation, Young then would be eligible, given the time he already has served, for consideration for at least an institutional parole in the event of consecutive sentencing and a parole to the outside world in the event of concurrent sentencing.

If the state district court instead rejects the plea bargain and directs the remaining option consistent with the judgment herein, a retrial, then Young's conviction again on the charges of sexual assault and attempted sexual assault hardly is a foregone conclusion.  As discussed above, the evidence on these charges was close.  It is nowhere near certain or even likely that Young necessarily would be convicted on those charges in a trial not impacted by repeated jailhouse references continually negating his presumption of innocence.  Even on the incest charge, how the defense then would respond to that charge in a retrial unfettered by the figurative shackles of the multiple jailhouse references would remain to be determined.  The strategic concession made in the first trial against the backdrop of the pretrial ruling might not be made by the defense in a retrial.  And in all events, a conviction only on the incest charge following a retrial would lead to far, far less sentencing exposure than under the current judgment.

This case thus is not one where, even if the respondents are unsuccessful on appeal, the petitioner then in truth likely will wind up in the same situation vis-à-vis his convictions and sentences once the State has corrected the multiple constitutional defects that have led to the current judgment of conviction being vacated. Time is therefore of central importance in applying the guiding factors to this particular case.

In considering the second factor, "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal . . . will be strongest where the remaining portion of the sentence to be served is long."  Braunskill, 481 U.S. at 777.  If the judgment of conviction vacated by this Court's judgment were to be reinstated on appeal, the remaining portion of the sentence to served indeed would be long.  The strength of the State's interest in this regard must be weighed in relation to the

20

1   strength of the case on appeal, however.  Id., at 778.  And in this case, Respondents'

2   case on appeal is not a strong one.

3           On the other hand, in considering the third factor, the time required for seeking

4   review, through a possible *certiorari* petition, would as a practical matter deny Young the

5   full benefit of the relief ordered by the Court, despite a successful defense of the appeal.

6   Young currently has served approximately five-and-a-half years under the vacated

7   judgment of conviction.  If the state district court accepts the plea bargain of two incest

8   counts, Young already would be eligible for consideration for an institutional parole if the

9   two then-maximum 4 to 10 year sentences were imposed consecutively or for a parole to

10  the outside world if the sentences were imposed concurrently.  Indeed, Young very well

11  may fully expire at least one 4 to 10 year sentence (if consecutive sentences are imposed)

12  with sentence credits accrued during federal appellate review, all with never having been

13  allowed a parole consideration opportunity.  In a consecutive-sentencing scenario, that

14  would automatically delay the date on which the second sentence would start running

15  until after the first sentence was fully discharged.  The pendency of federal appellate

16  review thus would extend Young's incarceration in an automatic manner that otherwise

17  would not occur in that fashion if the state district court instead were proceeding forward

18  immediately following this Court's judgment.  The only way for this Court to grant full relief

19  that truly places Young in the *status quo ante* existing prior to the unconstitutional pretrial

20  ruling and the lapsed plea offer therefore is to release Young, subject to the conditions

21  required herein, pending review.  Otherwise, he, at the very least, loses an opportunity

22  for parole that he otherwise would have had already at this point in serving his sentences

23  under an accepted plea bargain.[10]

24

25

26      [10] Cf. Marino, 812 F.3d at 509 (the court of appeals affirmed an order enlarging a petitioner on bail
    under Rule 23 taking into account, *inter alia*, "the fact that a denial of bail could leave the petitioner without
27  any remedy, given the State's appeal of the order granting conditional habeas relief and the length of time
    remaining to be served on the petitioner's sentence"); see also United States v. McCandless, 841 F.3d 819,
28  822-23 (9th Cir. 2016) (denying enlargement *pendente lite* where, in contrast, the prospect of over-serving
    a sentence pending review was not established).

Under Braunskill, "[t]he interest of the habeas petitioner in release pending appeal, always substantial, will be strongest" where the remaining time to be served is short, which it very likely will be following a successful appellate defense by Young.  Cf. 481 U.S. at 777-78.

The fourth factor, the public interest, which includes an interest in the equal administration of justice in accordance with the Constitution, otherwise is not disserved by enlargement pending review subject to the specific conditions required by this Court's order.

Respondents express concerns as to the likelihood of Young returning for court proceedings and of his possibly reoffending, but the Court is satisfied that the conditions required herein appropriately address any such concerns.  The Court notes the strong family ties and support network evidenced in the release plan materials submitted with the motion, and such strong family ties also were reflected over the course of the custodial telephone recordings reviewed by the Court for Ground 3.  It further is subject to substantial question the extent to which a 61-year-old man now with no other current prospects or resources after years of incarceration can successfully flee, particularly amidst a global pandemic.[11]

Accordingly, after having considered all applicable factors in combination on the record presented, the Court finds that the balance of the equities tilts, substantially, in favor of upholding the presumption for release under Rule 23(c) in this case.  The Court therefore will grant the motion for release, subject to the conditions of release required by this order.[12]

---

[11] A court's authority to establish conditions of release over and above possibly requiring the provision of surety when directing enlargement under Rule 23 is well-established.  See, e.g., O'Brien v. O'Lauglin, 557 U.S. 1301, 1303 (2009) (Breyer, J., as Circuit Justice); Jeff N. Rose, supra, at 4 (ordering a limited remand for the district court "to determine bond and other appropriate conditions for release"); Marino, 812 F.2d at 501 & 509 (affirming order setting conditions for release); see also Sanders v. Ratelle, 21 F.3d 1446, 1461-62 (9th Cir. 1994) (vis-à-vis requirements specifically to ensure appearance at future proceedings).

[12] The Court's analysis on the motion for release does not turn to any extent on the showing made regarding relative COVID-19 risks while incarcerated.  The Court finds and concludes that release is appropriate under Rule 23(c) wholly without regard to any such COVID-19 issues while in custody.

If any of the foregoing findings of fact instead should be considered a conclusion of law, or vice versa, it is the Court's intention that it be so considered.

**IT THEREFORE IS ORDERED**, pursuant to the Court's prior interlocutory partial merits order (ECF No. 74) together with and as modified by these findings, conclusions, and order, that the petition for a writ of habeas corpus, as amended, is GRANTED IN PART and DENIED IN PART with: (a) the petition as amended being GRANTED as specified further below on Grounds 3 and 4(c); (b) Grounds 1(a), 1(b) and 2 being DISMISSED with prejudice on the merits, with Ground 1 being subdivided herein as per ECF No. 74, at 12 n.1; and (c) the remaining Grounds 4(a), 4(b), 4(d) and 4(e) being DISMISSED without prejudice as moot following upon the Court's ruling on Ground 3 and Ground 4(c).

**IT FURTHER IS ORDERED**, following upon the foregoing paragraph, that the petition for a writ of habeas corpus, as amended, is conditionally granted and that, accordingly, the state court judgment of conviction of Petitioner Danny Young in No. 07C232506 in the Eight Judicial District Court for the State of Nevada hereby is VACATED as to all charges, and Petitioner shall be finally released from all state jurisdiction under said judgment within thirty (30) days from (a) the issuance of the mandate by the Court of Appeals if this matter is appealed by Respondents, or (b) the expiration of the time to appeal if no appeal is timely sought by Respondents, unless the following action is timely taken:

---

Respondents maintain, without citation to authority apposite to this context, that "even if this Court were to order release, Young would not be eligible to be released immediately and instead" would have to undergo a psychosexual evaluation pursuant to N.R.S. 213.1214(1) and 5(f) and be determined to not be a high risk to reoffend prior to any release.  (ECF No. 82, at 2-3.)  This argument appears to have been premised on the incest conviction not being vacated.  However, to be abundantly clear, Mr. Young is being released pending review pursuant to Rule 23(c), not as a matter of parole subject to conditions attending parole under state law, as to convictions that further have been vacated by the Court's order and judgment. The cited state law provisions do not provide a basis for failing to present Mr. Young for release.

Respondents make no argument, in the alternative to their arguments categorically opposing release, seeking a requirement of surety in any amount over and above a personal recognizance bond.

(a)  before the expiration of the above thirty (30) day period, the State retenders the plea offer described on the record at the April 2, 2009, calendar call in No. 07C232506, to counsel designated by Young and in the manner directed by said counsel, with the qualification that Young shall have thirty (30) days to respond to the offer;

(b)  if Petitioner rejects or does not timely accept the retendered plea offer, the State then will have thirty (30) days from the rejection of the plea offer or, absent a rejection, the expiration of the time to respond, to file a written election in this matter to retry Petitioner and thereafter will have one hundred twenty (120) days following the election to commence jury selection in a retrial of Petitioner;

(c)  if Petitioner instead timely accepts the retendered plea offer, the state district court then will have sixty (60) days to complete any necessary proceedings and then enter a written order effecting a decision as to whether to accept the plea bargain or instead remit the matter for a retrial; and

(d)  if the state district court rejects the plea bargain and instead remits the matter for a retrial, the State then will have one hundred twenty (120) days following the court's written order to commence jury selection in and proceed with a retrial of Petitioner.

**IT FURTHER IS ORDERED** that all of the foregoing time periods in subparagraphs (a) through (d) of the preceding full paragraph are subject to reasonable request for modification of the time periods in the judgment pursuant to Rules 59 or 60.

**IT FURTHER IS ORDERED** that the Clerk of Court shall enter final judgment accordingly in favor of Petitioner and against Respondents, conditionally granting the petition for a writ of habeas corpus, as amended, as provided in the preceding three full paragraphs. It is the Court's intention that the judgment so entered will be final and appealable, concluding the matter in the district court, subject to any post-judgment motions, as referenced above, requesting possible modification of time periods provided for within the judgment.

**IT FURTHER IS ORDERED**, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure that, prior to entry of this order and final judgment, the Clerk shall SUBSTITUTE William Hutchings for Respondent Brian Williams. The Court notes that such substitution is automatic under Rule 25(d) even without entry of a formal order, including with respect to the custodial officer responding to the directives herein.

**IT FURTHER IS ORDERED** that a Certificate of Appealability, to the extent that one is required, is GRANTED as to Grounds 1(a) and 1(b) and is DENIED as to Ground 2.

**IT FURTHER IS ORDERED** that, in anticipation of Respondents' appeal of the Court's orders and final judgment, Petitioner's motion for release (ECF No. 78) is GRANTED to the extent consistent with the remaining provisions of this order, and that Petitioner  Danny Young shall be released by Respondents from physical custody to the third party custodianship of his son Danny Young, Jr. and supervision by U.S. Probation within seven (7) calendar days of entry of this order, and upon prior execution by Petitioner and his son and filing herein—including separately, remotely, electronically and/or virtually as logistically necessary given, *inter alia*, COVID-19 constraints—of a personal recognizance appearance bond including conditions requiring:

> (a) release to the third party custodianship of Petitioner's son,
> Danny Young, Jr., in Nashville, Tennessee, who shall be
> responsible for: (i) housing Petitioner at Danny Young,
> Jr.'s home in Nashville and providing financial support for

essential needs to the extent required; (ii) transporting Petitioner and assuring his appearance as required for court dates and/or by probation services between Nashville and Las Vegas, Nevada; (iii) supervising Petitioner in accordance with all conditions of release; and (iv) notifying the Court immediately if Petitioner violates any condition of release or disappears;

(b) Petitioner shall report to the U.S. Probation Office in Las Vegas and/or Nashville as required by U.S. Probation in assigning his supervision to the respective office or offices;

(c) apart from court appearances in Nevada, Petitioner's travel, including in connection with employment, shall be restricted to Davidson County, Tennessee;

(d) for court and other required appearances, Petitioner's travel shall be restricted to the reasonably most direct route between Nashville and Las Vegas; and while in Nevada for such appearances, Petitioner shall remain within Clark County, Nevada, unless the appearance itself requires travel within Nevada outside Clark County;

(e) Petitioner shall maintain residence at the home of Danny Young, Jr. and may not move prior to obtaining permission from the Court or the supervising officer;

(f) Petitioner shall maintain or actively seek lawful and verifiable employment and notify the supervising officer prior to any change;

(g) Petitioner shall not be employed in, or be present in, any setting directly involving minor children;

26

(h) Petitioner shall avoid all contact directly or indirectly with any person who is an alleged victim, or who has been or may become a potential witness for the State, in connection with No. 07C232506 in the Eighth Judicial Court for the State of Nevada and/or related state proceedings, including but not limited to:  A.W. and Angela Sublett;

(i) Petitioner shall refrain from possessing a firearm, destructive device, or other dangerous weapon;

(j) Petitioner shall refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, including marijuana and/or any item containing tetrahydrocannabinol (THC), unless prescribed by a licensed medical practitioner;

(k) Petitioner shall participate in a location monitoring program and abide by its requirements as the supervising officer instructs, for home detention, pursuant to which Petitioner will be restricted to his residence at all times except for religious services; medical, substance abuse or mental health treatment; attorney visits; court-ordered obligations; or other activities, including employment, preapproved by the supervising officer;

(l) Petitioner shall submit to the type of location monitoring technology required and selected by the supervising officer and shall abide by all of the program requirements and instructions provided by the supervising officer related to the proper operation of the technology;

(m) Petitioner shall not tamper with, damage, or remove the monitoring device and shall charge the said equipment according to the instructions provided by the supervising officer;

(n) Petitioner shall comply with any applicable registration and related requirements in Nevada and/or Tennessee based upon his prior March 5, 1991, conviction in No. 90C094832 in the Eighth Judicial District Court for the State of Nevada;

(o) Petitioner shall report, via telephone, any instance of COVID-19 symptoms, exposure and/or quarantine or stay-at-home order immediately to the Court or supervising officer and further inform the Court or officer of any resulting conflicts with required appearances, as applicable; and

(p) Petitioner shall comply with the directives of medical, public health, and government officials with respect to any quarantine and/or stay-at-home order.

Petitioner shall be released sooner by order of the Court if Petitioner and his son execute the bond prior to seven calendar days from this order.

The Clerk further shall provide a copy of this order and the judgment to the Clerk of the Eighth Judicial District Court, in connection with that court's No. 07C232506.

DATED: January 20, 2021

RICHARD F. BOULWARE, II
United States District Judge